IRVING INVENTASCH vs. SUPERIOR FIRE INSURANCE CO.

JUNE 22, 1927.

PRESENT: Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1)  Insurance.  Knowledge of Insured of Terms of Policy.

In legal contemplation knowledge of the terms of a policy is possessed by the insured, even though he be illiterate.

(2)  Insurance.  Conditions.  Void and voidable.

The great weight of authority is that the word "void" is to be read as "voidable" when the condition is for the advantage of one party only; and a condition in a policy of insurance against encumbrances and other conditions in the same group, providing that upon breach the policy shall be void, are for the benefit of the insurer with the consequent right to elect after knowledge of the breach, whether to treat the policy as of no effect or as still in force.

(3)  Insurance.  Condition Against Encumbrance.  Void or Voidable.

Where a policy of insurance provided that unless otherwise provided by agreement endorsed thereon or added thereto the policy should be void if insured encumbered the property by a chattel mortgage, the policy by the placing of such mortgage is not void beyond the possibility of reinstatement without new consideration but the placing of the mortgage renders the policy voidable at the option of insurer.

(4)  Insurance.  General Agent.  Authority to Orally Waive Conditions.

A general agent of an insurance company has no authority to orally waive the conditions of the policy against encumbrances of the property, in spite of the explicit terms of the policy to the contrary.

(5)  Insurance.  Waiver.

Waiver is the intentional relinquishment of a known right.

(6)  Insurance.  Waiver of Conditions.

Where by the terms of an insurance policy insurer and insured have agreed that no agent or officer of the company may waive its conditions except in writing attached to the policy, such provision is valid and binding apart from statute.

(7)  Insurance.  Waiver of Conditions.  Authority of Agent.

Limitations on the face of a policy requiring waiver of its conditions to be by written agreement endorsed thereon, were notice to insured of the general agent's want of authority to waive conditions except in writing.

(8)  Insurance.  Authority of Agent.  Waiver.  Estoppel.

Statement by general agent that he would try to get the insurance company to reconsider its intention to void the policy and if not successful he would act for insured in procuring other insurance, was not an assurance that

meanwhile the policy was in force and in making this attempt, the agent would be acting on behalf of insured and not as agent of the company, and his conduct could not operate as an estoppel upon the company.

*(9)   Insurance.   Estoppel.   Statements by Agent.*

Statement by general agent of insurance company to brother of insured, in response to a question as to insured's policy, that he needn't worry, because "everything is well taken care of", the brother not acting in any representative capacity for insured, and taken in connection with the known necessity by insured for a written waiver of breach, did not estop the company from using the breach by insured as a defence.

*(10)   Insurance.   Return of Premium.   Estoppel.*

Where the breach of a policy was the result of insured's act, the company's failure to return the premium has no necessary effect thereon when insured has made no request for a waiver of breach.

*(11)   Insurance.   Estoppel.   Burden of Proof.*

The burden of proving that the conduct of the insurance company or its agent did mislead insured and that he reasonably was entitled to rely on such conduct is on insured.

ASSUMPSIT.   Heard on exceptions of plaintiff to decision of Superior Court and overruled.

BARROWS, J.   This case is heard on exceptions of plaintiff to a decision for defendant after trial by the Superior Court sitting without a jury.

The parties have discussed briefly whether the written decision impliedly found disputed facts in favor of defendant. We shall not determine this because the legal questions upon which the decision rested are controlling, even if the facts asserted by plaintiff be accepted.

The action was on a standard form of fire insurance policy covering personal property. G. L. 1923, C. 258. It contained the condition: "This entire policy unless otherwise provided by agreement endorsed hereon or added hereto shall be void   .   .   .   if the subject of the insurance be personal property and be or become encumbered by a chattel mortgage;" "no agent   .   .   .   shall have power to waive any condition of this policy except such   .   .   . as may be subject to agreement endorsed hereon" and

further that no privileges or permissions affecting the insurance shall be claimed unless written upon or attached to (1) the policy. In legal contemplation knowledge of such terms is possessed by the insured, *Parsons* v. *Lane*, 97 Minn. 98, *Northern Ass. Co.* v. *Grand View Bldg. Assn.*, 183 U. S. 308, at 361, even though he be illiterate. *Urbaniak* v. *Firemen's Ins. Co.*, 227 Mass. 132. See also 26 C. J. 291.

After issuance of the policy in February, 1925, it always remained in plaintiff's possession and no request ever was made for permission to mortgage the property. A chattel mortgage was placed July 22, 1925, without the knowledge of the company. July 30 the company, learning of said mortgage, notified its Boston agent who wrote to Fuller, its agent in Rhode Island, that information had been received that a chattel mortgage had been filed and if so ordering an immediate cancellation of the policy. Fuller on August 3 wrote plaintiff as follows: "We have received a letter from our insurance company requesting cancellation—because of the fact that they have information that a chattel mortgage has been placed—On this account they ask to be relieved of this risk and wish their policy cancelled   .   .   .

"   .   .   .   Insurance companies do not like to insure stock covered by chattel mortgages but if you will write us the circumstances for which the money is to be used and when and how it is to be paid up we will advise the company and they may allow the insurance to remain in force.

"Kindly let us hear from you at once and in case this company cancels the policy after giving them this information, we may be able to place it in another company."

To this communication plaintiff, an unlettered man, made no reply. Some time in August, in response to a 'phone call from Fuller, plaintiff says he got his brother to write a letter giving Fuller the information "why the mortgage was taken out, how payable and how much was paid already." The contents of this letter were proved by the recollection of plaintiff's brother. Fuller denied the receipt of any such letter and plaintiff admitted he had kept no copy of it. The

brother of plaintiff also testified that two weeks after writing the alleged letter he saw Fuller and asked him how he made out on plaintiff's policy, to which Fuller replied, "You needn't worry about that. Everything is well taken care of." This conversation Fuller denied. Plaintiff did nothing to have the policy validated and prior to loss did not again communicate with Fuller.

November 9, 1925, a fire occurred and later defendant offered to return the full premium, claiming misrepresentation in procuring the policy as well as its avoidance by reason of the chattel mortgage. Fuller's commission shows that his authority was to effect insurance and renew policies, consent to assignments and transfers and collect premiums. He was more than a mere local agent or solicitor of insurance. He was the general agent through whose hands defendant's Rhode Island business passed.

Plaintiff's contentions are (1) that the policy was voidable not void; (2) that the company waived the right to insist that the giving of the chattel mortgage avoided the policy, and (3) that, irrespective of the alleged waiver, the company was estopped to assert invalidity of the policy.

(2) It is true that this court has often referred to insurance policies as "void" when conditions have been broken. But in no case was the court construing the legal meaning to be given to the word "void." The great weight of authority is that the word "void" is to be read as voidable when the condition is for the advantage of one party only. Williston on Contracts, § 746; 32 C. J. 1317; 14 R. C. L. 1155; that the condition against encumbrances and other conditions in the same group are for the benefit of the insurer with the consequent right to elect after knowledge of the breach of condition whether to treat the policy as of no effect or as still in force. *Insurance Co.* v. *Norton,* 96 U. S. 234; *Northern Ins. Co.* v. *Grand View Bldg. Assn.,* 183 U. S. *supra.* Williston on Contracts, § 758, says: "Even after breach of condition the contract still exists but it exists as a conditional contract." . . . "the situation

is not the same as if no contract existed." A holding that the policy has not become an absolute nullity is advantageous to the insured who by his voluntary act without knowledge of the insurer has placed himself outside the terms of the policy. This construction enables the insured to seek reinstatement of the policy without new consideration. *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9. The terms of the policy make plain how the insured may procure a reinstatement, viz., by securing the company's consent in writing to the chattel mortgage. He must act in accordance with these terms, particularly when the policy remains in his possession. *Tompkins* v. *Hartford Fire Ins. Co.*, 49 N. Y. Supp. 184 (chattel mortgage).

(3) We therefore conclude that the policy by the placing of the chattel mortgage was not void beyond the possibility of reinstatement without new consideration. The placing of the chattel mortgage rendered the policy voidable at the option of the insurer.

Did the insurer waive plaintiff's breach of condition? No contention is made that it did so in writing. The policy's terms concerning the method of waiving the rights of the insurer are not ambiguous. Such waiver must be written and attached to the policy. We recognize the existence of but can not agree with authorities holding that an oral waiver of the conditions of an insurance policy against encumbrances may be made by a general agent in spite of the explicit terms of the policy to the contrary. (4) *Rediker* v. *Queen Ins. Co.*, 107 Mich. 224. Numerous courts so holding treat waiver and estoppel as synonymous and it is important to note this. *Phenix Ins. Co.* v. *Grove*, 215 Ill. 299. Waiver is used in many senses, Williston on Contracts, § 679, 18 H. L. R. 364. *Northern Ass. Co.* v. *Grand View Bldg. Assn.*, 183 U. S. 308, at 357, thus asserts identity with estoppel: "The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel." When so

used it is sometimes called implied waiver because it lacks the element of intention.  See note in 25 L. R. A. (N. S.) 1.

In Rhode Island, however, as applying to insurance policies, waiver and estoppel have been differentiated.  In *Metcalf* v. *Phenix Ins. Co.*, 21 R. I. 307, followed by *Gilbert* v. *Hayward*, 37 R. I. 321, waiver is defined as the intentional relinquishment of a known right.  See to the same effect 7 Cooley, Briefs on Ins. p. 907.  26 C. J. 280.  It "does not imply any conduct or dealing with another by which that other is induced to act or to forbear to act to his disadvantage.  Estoppel necessarily presupposes some such conduct or dealing with another."  *Metcalf* v. *Phenix Ins. Co., supra,* at 309.  Estoppel, therefore, in the present case would arise from conduct or dealings with the plaintiff as a result of which the defendant should not be permitted to deny liability under the policy.  *Humes Construction Co.* v. *Philadelphia Casualty Co.*, 32 R. I. 246, holding that courts of law in considering estoppel act upon broad equitable principles, said, at p. 252:  "A person with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another."  This legal principle does not depend on misrepresentation.

By the terms of the policy, which is a contract made by and binding upon the parties, *Imperial Fire Ins. Co.* v. *Coos Co.*, 151 U. S. 452, *Egan* v. *Westchester Ins. Co.*, 28 Ore. 289 (chattel mortgage), insurer and insured have agreed that no agent or officer of the company may waive the conditions except in writing attached to the policy.  Such provision is valid and binding apart from statute.  *Gladding* v. *California Ins. Assn.*, 66 Calif. 6; *Atlas Reduction Co.* v. *New Zealand Ins. Co.*, 138 Fed. 497, but when fixed by statute its validity is beyond dispute.  No written waiver of any conditions of the policy was made or asked for.  Nor does Fuller's alleged oral statement that "everything is well taken care of" show his or the company's intention not to insist on the terms of the policy if con-

ditions were broken. Since waiver requires volitional action, our conclusion is that the defendant did not waive the condition of the policy relating to chattel mortgages. There can be no claim that it did or said anything indicating an intention to waive the requirement of the policy that change of conditions must be in writing attached to the policy.

Conceding that the policy was voidable at the election of the insurance company and that there was no waiver of right to assert invalidity because of the chattel mortgage, the question still remains whether anything said or done by the company or its agent Fuller induced plaintiff to act or fail to act as a result of which plaintiff was damaged. If so, although the terms of the policy were not waived; the authorities generally prevent the company from using the breach as a defence. *Agricultural Ins. Co.* v. *Potts*, 55 N. J. L. 158. This procedure is properly referred to as an estoppel, Williston on Contracts, § 758, or *quasi* estoppel. *Humes Const. Co.* v. *Phila. Cas. Co.*, *supra*. It is obvious that the nature of the alleged misleading conduct is the determining consideration, viz., knowledge of other insurance existing at the time a policy is written will prevent assertion of the existing insurance as a breach of condition against other insurance. *Greene* v. *Equitable Fire Ins. Co.*, 11 R. I. 434; *Reed* v. *Equitable Fire Ins. Co.*, 17 R. I. 785. When the breach occurs by act of the insured after issuance of the policy, such as by making a chattel mortgage, the insurer's conduct can create an estoppel only if the insured can reasonably claim that the conduct of the company led him to believe that the company would not assert its rights after plaintiff had violated the terms of the policy; thus, if the agent with power to consent to other insurance, at the request of insured takes the policy or agrees to get it from a third person for the purpose of indorsing consent thereon. *Manchester* v. *Ass. Co.*, 151 N. Y. 88. A like situation is found in many cases when the insurer accepts a renewal premium with full knowledge of insured's breach of con-

dition.   *Northern Ass. Co.* v. *Grand View Bldg. Assn., supra,*
at 357.   Whether insured can reasonably believe that the
breach will not be insisted upon must be tested in part by
the terms of the policy, knowledge of which, as before noted,
is imputed to the insured.

Plaintiff seeks to rest this *quasi* estoppel on three grounds:
(a) Fuller's letter above quoted;  (b) Fuller's alleged oral
statement to the brother that everything was well taken
care of;  (c) failure of the insurer to return the unearned
premium.

(7)   The only way the company can act is through an agent
but we have held that the knowledge of a special agent of
insured's partial ownership which vitiated a policy was not
the knowledge of the company.   *Salvate* v. *Firemen's Ins.
Co.,* 42 R. I. 433.   We suggested therein that knowledge of
the general agent might stand upon a different basis and we
have recently held that a company might be liable on a
contract to insure by reason of the statement of a general
agent within the scope of his authority to the effect that
plaintiff was covered even though the agent made a mistake
in issuing and dating the policy actually handed to plaintiff.
*Fliger* v. *Penn. F. Ins. Co., Same* v. *Hartford F. Ins. Co.,
Same* v. *Glens Falls Fire Ins. Co.,*    (Filed May 20, 1927)
48 R. I. 274.

An examination of Fuller's actual authority as shown by
his commission does not indicate that he had any power to
act for the company in electing not to insist upon invalidity
for a condition broken after issuance.   With knowledge of
these limitations, however, plaintiff was not chargeable, 14
R. C. L. 1158, and it might be urged that as general agent
through whom defendant was required to act in Rhode
Island such power was within his ostensible authority.
*Sharman* v. *Ins. Co.,* 167 Calif. 117.   In fact it is a fair
inference from Fuller's testimony that it was he who in-
dorsed written waivers on the policy when so directed by
the company.   The limitations on the face of the policy are,
however, notice to the insured of the agent's want of au-

thority to waive conditions except in writing attached to the policy.    14 R. C. L. 1162; *Brown* v. *Mass. Mutual Life Ins. Co.*, 59 N. H. 298.    In the face of these limitations it is difficult to see how the insured reasonably may claim that he was lulled into belief that Fuller's letter indicated that the broken condition would not be asserted.    14 R. C. L. 1158.

Assuming, however, that a general agent might so act as to render it reasonable for the insured to believe that the broken condition would not be asserted by the company to avoid the policy, viz., as where in excess of actual authority the agent indorsed a written waiver upon the policy, Fuller's letter to plaintiff distinctly indicates that decision of whether or not to treat the policy as void because of the mortgage was to be made not by Fuller but by higher authority whose answer he required before he could act. The letter before us resembles that in the case of *Allemania v. Hurd*, 37 Mich. 11.    The most that plaintiff can claim for the letter is that its later paragraphs cast a doubt upon the meaning of the opening paragraph which if taken alone is plainly an indication that the company was insisting that the mortgage voided the policy.    A more reasonable construction of the later paragraphs is that the agent would try to get the company to reconsider and if not successful he would act for the plaintiff in procuring other insurance. This is not an assurance that meanwhile the policy is in force.    In making this attempt, Fuller would be acting as the agent of the insured and not of the defendant company, *Wilson* v. *Ins. Co.*, 4 R. I. 141, and his conduct could not operate as an estoppel upon the defendant.    Plaintiff reasonably can not claim to have been led by this letter to believe that his insurance was continuing in defendant company as if unaffected by the chattel mortgage.    He knew the effect of the mortgage.    He knew that Fuller was going to try to get that effect nullified and that Fuller without the consent of higher officials could not waive the broken condition.    The letter therefore in our opinion does not create an estoppel.

(9) Assuming that Fuller told plaintiff's brother in response to a question as to how Fuller was coming on in regard to plaintiff's policy, that he needn't worry because "everything is well taken care of," we find no evidence that this statement was communicated to plaintiff. At the time of the alleged remark Fuller was at the brother's place of business on other matters and the inquiry was a casual one at the end of the conversation as Fuller was leaving. It was not made by the brother in the course of any business he was attending to for plaintiff. It was an inquiry solely for information of the brother. Moreover, if communicated, the language is far from an assertion that defendant company would not insist that the policy before us had been avoided. It might mean that Fuller had placed or would place plaintiff's insurance in other companies. The inquiry indicates, at least, that the brother understood that the breach had not been waived at the time he wrote the letter to Fuller in August. If the brother understood that the question of validity was in abeyance, it is fair to infer that plaintiff so understood. Plaintiff, himself, after this letter · never saw or communicated with Fuller prior to the fire. He sought no indorsement on the policy and it always remained in his possession. Fuller's oral reply to plaintiff's brother, therefore, while capable of two interpretations, when taken in connection with the known necessity for a written waiver of breach did not estop the defendant company from using the breach as a defence. Plaintiff was not entitled to neglect the plain requirements of his contract with defendant simply because defendant's agent told his brother that everything would be all right and then claim that the agent's conduct misled him and is to be attributed to defendant. As said by Williston on Contracts, p. 1443: "The terms of the policy preclude the supposition of authority on the part of an agent to make parol promises and also preclude the reasonableness of reliance thereon." *Cass* v. *Lord*, 236 Mass. 430, held that neither estoppel nor waiver can be deduced from conversations with the agent.

Plaintiff urges that failure to return the unearned premium after knowledge of the breach and before loss created an estoppel. He is not without support. *Glens Falls Ins. Co.* v. *Michael,* 167 Ind. 659. Retention of premium after loss and knowledge of the breach commonly so operates. Cooley, Briefs on Ins. Supp. p. 1018. The policy provides for a return of the unearned premium in event of cancellation. Plaintiff unquestionably has a right of action therefor. Return of the premium before loss, however, is not by the weight of authority essential to avoidance of the policy for conditions broken. 14 R. C. L. 1193; *Woodard* v. *German American Ins. Co.,* 128 Wisc. 1; *Parsons* v. *Lane,* 97 Minn. 98. The breach was the result of insured's act. The company's failure to return the premium has no necessary effect thereon when plaintiff has made no request for a waiver of breach. The premium was paid in full when the policy was issued. The insurer's duty not to mislead the insured to his injury was not violated by retention of the premium. Williston on Contracts, p. 1435. We are cognizant of the practice of insured persons to deal with a general insurance agent in blind reliance on his authority and without examination of the terms of the policy or even consideration of the company that the agent represents. But an insurance policy is a contract and the law of agency in reference thereto ought not to be disregarded because of common imprudent practices. We are aware of the tendency of courts to indulge presumptions against the insurer, and to favor insured in case of ambiguous terms of the policy. *Imperial Fire Ins. Co.* v. *Coos Co., supra. Messler* v. *Ins. Co.,* 42 R. I. 460, but where the terms of the contract are clearly expressed, in a standard policy, we see no warrant for the court to disregard the plain meaning of the language in the contract. *Atlas Reduction Co.* v. *New Zealand Ins. Co., supra.* Nor should the court depart from the usual requirement of clear proof to raise an estoppel because this is an insurance contract. The burden of proving that the conduct of defendant or its agent did mislead plaintiff and

that he reasonably was entitled to rely on such conduct rested upon plaintiff.   We do not think it has been sustained in view of the terms of the policy and binding force thereof as well upon plaintiff as upon defendant.   The wisdom of the conditions in the policy is not for the court to pass upon. They have been fixed by the legislature.   In addition to the cases heretofore cited see *Atwood* v. *Caledonian Ins. Co.,* 206 Mass. 96; *Hronish* v. *Home Ins. Co.,* 33 So. Dak. 428; *Western Ass. Co.* v. *Doull,* 12 Canada Supreme Ct. 446.

Plaintiff's exceptions to the decision of the Superior Court are overruled.

The case is remitted to the Superior Court for entry of judgment on the decision.

*Judah C. Semonoff,* for plaintiff.

*Sherwood, Heltzen & Clifford,* for defendant.