der the lease, it would, in the event she conveyed, be confined to the 75 acres. That point is not clearly covered by the instruments. In view of the fact that the instruments were formulated and drafted by a scrivener, little weight is to be attached to any formal words employed. The judicial construction of the other instruments is now before the court only in so far as it may aid in the construction of the contract for the sale of the land. It is doubtful whether any construction could be given to them that would be consistent with all of them or free from doubt. It will not do, therefore, on the deed and leases, to speculate as to the intention of the parties with respect to the time the contract was to be consummated by payment of the purchase price and conveyance of the land, and the agreement of the parties with respect to the sale and purchase of the 50 acres must be given effect as the parties have reduced it to writing in the form of the contract.

If the vendor were still living and resisting specific performance after she has been obliged to raise money by mortgaging the premises on the failure of the vendee's executrix to perform and after the value of the premises has so materially increased, it seems quite clear to me that the court would not, on these facts, require her to convey the premises on payment of the consideration specified in the contract. Her executor stands in her right.

It follows that the complaint should be dismissed upon the merits, but the rights of the parties were so involved and doubtful that no costs should be imposed upon plaintiffs.

Judgment accordingly.

---

(85 Misc. Rep. 539)

UNITED WASTE MFG. CO. v. MARYLAND CASUALTY CO.

(Supreme Court, Trial Term, Rensselaer County. May, 1914.)

1. INSURANCE (§ 435*)—INDEMNITY INSURANCE—CONSTRUCTION OF POLICY.
   An employer's indemnity insurance policy, providing that it should not cover any accident to a child employed contrary to law, did not cover an injury received by a boy under 16 years of age while in the insured company's employ.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144; Dec. Dig. § 435.*]

2. INSURANCE (§ 435*)—INDEMNITY INSURANCE—CONSTRUCTION.
   An employer's indemnity insurance policy requiring the insurer to investigate and defend all suits brought against the insured, even if groundless, of which notice was given, unless the insured should elect to settle, did not require it to defend an action for which it was not liable under the policy.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144; Dec. Dig. § 435.*]

3. INSURANCE (§ 388*)—INDEMNITY INSURANCE—ESTOPPEL.
   An employer's indemnity company, by assuming the defense of a negligence action pursuant to its policy, is not estopped from denying liability thereon; especially where it has reserved its rights in the matter.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1026, 1027, 1030, 1035, 1040, 1057; Dec. Dig. § 388.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INSURANCE (§ 668*)—INDEMNITY INSURANCE—REASONABLENESS OF NOTICE—
QUESTION OF LAW.

Where an employer's indemnity insurance company defended an action against an insured, but expressly reserved its right to disclaim liability, and, upon ascertaining that it was not liable on the policy regardless of the liability of the insured, its attorney notified insured that his client would no longer defend, and requested that the insured have its attorney substituted in his place as he would withdraw from the case on a certain day, and where the insured made no attempt to have such substitution made and permitted a default, the question of the reasonableness of the notice was one of law for the court.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. § 668.*] .

Action by the United Waste Manufacturing Company against the Maryland Casualty Company to recover under a policy of indemnity insurance. Trial before the court without a jury. Complaint dismissed.

Shaw, Bailey & Murphy, of Troy, for plaintiff.
William E. Fitzsimmons, of Albany (Michael D. Reilly, of Albany, of counsel), for defendant.

RUDD, J. This action is brought to recover under a policy of indemnity insurance issued to the plaintiff by the defendant. The recovery sought is $1,700, with interest. The amount is made up of $1,450 paid by the plaintiff in settlement of two actions for personal injuries brought against it because of the injury of Peter Maloney, an infant, who had been in the employ of the United Waste Manufacturing Company, and the further sum of $250 which the plaintiff claims to have paid as counsel fees in connection with the settlement of the said cases.

The policy of indemnity issued by the defendant contained this clause:

"This policy does not cover any accident to or caused by any child employed by the assured contrary to law."

Peter Maloney was injured in August, 1912.

In the report of the accident made by the waste company to the insurance company, it was stated that the injured boy was about 18 years of age.

In the action brought against the waste company to recover for injuries to the Maloney boy, the complaint alleged that the boy was under 16 years of age. The answer of the waste company denied this allegation.

The answer was verified by an officer of the waste company, and in about five weeks after the answer was verified the attorney for the insurance company wrote a letter addressed to the waste company, asking it "to make a careful examination of your files to ascertain whether or not you have on file a certificate as to the age of Peter Maloney, whose father claims in his complaint against you that the boy is under sixteen years of age."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Immediately the waste company replied, stating that there was no certificate on file and that all that was known by the waste company concerning the boy's age was that the boy's father had stated that he was over 16. The waste company further says that it never had a "certificate of his."

In the answer filed by the waste company, William E. Fitzsimmons, the attorney of the Maryland Casualty Company, appeared as the attorney for the defendant waste company, and this appearance was under and in accordance with the provisions of the policy issued by the Maryland Casualty Company.

The answer filed in the Maloney action was the answer of the waste company, and it set forth such facts and made such allegations as were relied upon by the waste company in making its defense in the Maloney case.

The question as to the boy's age at the time of his employment by the waste company was the subject of consideration by the casualty company. As above stated, immediately after the answer had been interposed, inquiry was made by the casualty company concerning the certificate.

Within five days after the waste company stated that it never had had a certificate the casualty company's attorney addressed to the waste company, for which company the attorney was appearing in the negligence action, another letter calling the waste company's attention to the fact that its original report of the accident stated that Peter Maloney was of the age of 18 years, and that upon investigation thus far made "it would appear that he was under sixteen years of age," and called the waste company's attention to the clause of the policy which provided:

"That no minor under the legal age is to be employed contrary to law and without a proper certificate on file in your office."

Then the attorney·for the casualty company in this same letter says:
·· "In the meantime, so that your interests may be fully protected, I will, on behalf of the company, continue to handle the action founded upon the above-entitled claim pending the completion of our investigation, the company, however, reserving all of its rights to make a disclaimer of liability on account of the accident in the above entitled matter. If you desire that your attorney co-operate with me, I will be very pleased to take the matter up with him at any time."

Three days after receiving this letter the waste company replied, saying:

"This boy's father who was working for us at the time asked us to employ him and said that he was over 16 years of age and we can furnish you with an affidavit to that effect."

On the following day, January 8, 1913, the attorney representing the casualty company addressed a letter to the waste company, in which he said:

"I have written to the Health Department of the City of Woonsocket, R. I., and also to the pastor of the church in which Peter·Maloney was baptized, for data as to the date of his birth. Within a day or two, I expect to be in possession of the information requested. I am satisfied, however, from a let-

ter exhibited to me this morning by Mr. Carter, attorney for the plaintiff, received from the pastor of the church to which I have written, that Maloney was not sixteen years of age at the time he was injured. If my further investigation bears out that fact, the Maryland Casualty Company will disclaim liability in this case. I therefore write to urge you to consult your corporation attorney at once.

"This morning, Judge Cochrane of the Supreme Court was about to place the action founded upon this claim on the day calendar, which means that we must be ready at all times to proceed with the trial. After I explained the situation he consented to allow the matter to rest for one week, during which time, you are to have your own attorney substituted in my place.

"I will be pleased to give your attorney the result of my investigation in this matter."

The next day the casualty company wrote a letter directed to the plaintiff, the waste company, saying:

"The investigation made in the above caption, by our attorney, Mr. Fitzsimmons of Albany, N. Y., shows that injured in this case at the time of the accident, was not of legal age and was therefore employed by you contrary to law and in violation of the terms of our policy. We therefore must disclaim all liability under your policy in this case, and are to-day advising our attorney, Mr. Fitzsimmons, to withdraw his appearance in suit entered in this caption and turn same over to you or your attorneys for future defense."

The following day, January 10, 1913, the attorney for the casualty company addressed a letter to the waste company, as follows:

"In conformity with instructions received from the Home Office of the Maryland Casualty Company under date of yesterday, I hereby formally notify you that I have been directed to withdraw as attorney for defendant in the two actions founded upon the above-entitled claim. I will withdraw from the case Monday, January 13th, but what would be preferable, have your own attorney substituted in my place at that time. Will you be kind enough to communicate with me before twelve o'clock Monday, what attorney is to be substituted in my place, if any? As I advised you a few days ago, one of the actions founded upon this claim is to be ready for trial Thursday, January 16, 1913."

On the following day, January 11th, the waste company addressed a letter to the Maryland Casualty Company, sending it to the home office in Baltimore, saying:

"We are in receipt of your favor of January 9, 1913, in reference to the above-entitled claim. This action was commenced a long time ago. The papers were turned over to you and you assumed the defense of it. We understand that the case is now about to be reached for trial at the Albany Trial Term. The information, which we have at hand, and which was furnished us at the time of the employment of Maloney, shows that he was then over the age of sixteen. We expect you to defend this action and pay whatever judgment may be recovered against us, if any, in accordance with the terms of the policy, which you issued to us and in view of the charge you have had of this case. You will understand that we do not and will not assent to your taking this case up to this point and then abandoning it. You will appreciate the damage that would result to us from such course and the position in which you will have placed us, and we do not intend to be foreclosed by any such disposition on your part."

On January 15, 1913, the casualty company's attorney telegraphed to the waste company that in accordance with instructions from Justice Cochrane, who was presiding at the Trial Term where the case was marked ready for trial, he had filed the papers in the Maloney

action with the clerk of the court, and that the cause was on the day calendar for trial for the next day.

This telegram was sent on the 15th. An inquest was taken in the Maloney action on the 22d day of January, 1913, the verdict of the jury being in favor of the plaintiff for the sum of $2,300.

After the entry of the judgment in the Maloney case the waste company made a motion to open the default. That motion was not prosecuted, and the two actions growing out of the injury to the Maloney boy were settled by the waste company by the payment of $1,450, for which sum this action is brought by the waste company, claiming that the casualty company, the defendant here, is liable under its policy for the amount thus paid by the waste company in settlement of the Malone cases, together with the sum of $250 alleged to have been paid by the waste company for counsel, and that such liability grows out of the policy of indemnity.

That reliance is had by the plaintiff in this action, in seeking a recovery against the defendant, principally because the defendant appeared in the Maloney case, undertook the defense thereof, and, as the plaintiff claims, abandoned the case to the prejudice and damage of the plaintiff here.

Upon this trial the issues involved in the Maloney case against the waste company were not intended to be tried out, but testimony was permitted, as shown by a birth certificate, from which it appeared that the Maloney boy was born November 16, 1896, and that therefore he was under 16 years of age at the time of the accident, and for the purpose of inquiring as to the claim, which appeared in the correspondence, made by the waste company to the effect that the father of the boy had told an officer of the waste company that the boy was over 16 years of age, the defendant called the father as a witness upon this trial, and the father testified that the boy was in fact under 16 years of age at the time of the accident, and that the father had never informed the waste company or any of its officers that the boy was over 16 years of age.

[1] The question therefore fairly comes as to the liability of the defendant here under its policy.

If the boy was under 16 years of age, the waste company was not protected by the policy issued by the defendant.

The report of the accident made by the waste company to the casualty company showed that the boy at the time of the accident was at least 18 years of age. By the record hereinbefore set forth it appears that immediately after the joining of the issue in the Maloney case the question of the age of this boy was a matter of careful consideration and deep concern on the part of the casualty company. It properly was so, for if the boy was less than 16 the casualty company should not be called upon to defend under its policy, and would not be called upon eventually to pay any judgment which might be entered.

The casualty company advised the waste company immediately as to what its investigation showed and called upon the waste company

for a certificate provided for by law. The certificate was not on file and never had been.

By the letters of the waste company it appeared that as to the age of the boy it relied entirely upon the statement made to it by the boy's father.

In the trial of this issue the boy's father denies that he made such a statement.

The casualty company gave notice to the waste company as to its disclaimer of liability after it was shown that the boy was under 16 years of age. It called the attention of the waste company to the certificate of birth shown to the casualty company's attorney by the attorney representing the Maloney boy.

The casualty company's attorney notified the plaintiff as to the condition of the case on the calendar, caused the case to be held, took the advice of the presiding justice, disposed of the papers in the case in accordance with the instructions of the court, promptly advised the waste company, suggested substitution of attorneys, indicated a willingness and a desire and intention to retire from the case, because the casualty company would not assume the liability incident to a defense of the case under the facts which had been developed concerning the boy's age.

The waste company did not see fit to cause a substitution to be made, did not see fit to appear in the court, would not assume any liability or responsibility, did not furnish any evidence that it might have had concerning proof as to the boy's age, simply reiterated that it relied upon the statement of the father, did not see fit to interest itself at all in the matter of inquiring as to the correctness of the birth certificate which the waste company was advised plaintiff's attorney, Mr. Carter, had.

The first letter of the casualty company's attorney informed the waste company that investigation showed that the boy was under 16 years of age, and that the company, in order that the interests of the waste company might be fully protected, would "continue to handle the action founded upon the above-entitled claim pending the completion of our investigation, the company, however, reserving all of its rights to make a disclaimer of liability on account of the accident in the above-entitled matter."

This letter was written 18 days before the inquest was taken, the casualty company thereby expressly reserved its right to make a disclaimer of liability, and contained an offer to coöperate with the waste company's attorney.

The letter of January 17th, written by the attorney for the casualty company to the waste company, in which an offer of settlement is referred to, cannot be relied upon here as indicating that the casualty company had in any way reconsidered the position which it had taken with reference to its liability under the policy or with reference to the attitude which the casualty company would bear in the matter of presenting the waste company's defense in the Maloney case.

The plaintiff contends that the casualty company never returned

the summons or the papers in the Maloney action to the waste company and never actually offered or tendered a written stipulation for substitution of attorneys.

The testimony, however, shows, as indicated by the letters received, that the defendant here requested the plaintiff to substitute its own attorneys, and that the defendant here offered to turn over the papers to the plaintiff, and in fact left them with the clerk of the court, under the instructions of the court, and notified the waste company to that effect.

The plaintiff operated a shoddy factory or mill, and the Maloney boy was employed as a feeder boy at one of the picking machines. The evidence shows that he was under 16 years of age at the time of his injury. His employment was in violation of the law.

The indemnity policy did not cover the accident suffered by the Maloney boy, for the reason that he was employed by the assured contrary to law.

The defendant was not obliged to defend an action which was excepted in terms by the policy.

[2] The defendant was obliged to investigate and defend all suits brought against the insured, even if groundless, of which notices were given, unless the defendant should elect to settle the claim or suit. But that requirement did not, and could not, call upon the defendant to defend an action for which under the terms of the policy it was not liable.

That is not what is meant by the provision with reference to defending suits even if groundless.

[3] An insurance company by assuming the defense of a negligence action, pursuant to the provisions of its policy, is not estopped from deying its liability thereunder. Buffalo Steel Co. v. Ætna Life Ins. Co., 156 App. Div. 453, 141 N. Y. Supp. 1027.

The case just cited is in affirmance of the Trial Term, Wheeler, J., 136 N. Y. Supp. 977. Justice Wheeler writes:

"It appears from the correspondence between the parties and the evidence on this trial that the claim that Tetter was under the age of 16 at the time of the accident was brought to the attention of both parties, and the claim of the insurance company that, if such was the fact, the risk was not covered by the policy, was the subject of discussion between them."

With an understanding between the parties in the case just cited, the attorney for the insurance company appeared and tried the action, which resulted in a judgment, and it was claimed that the action on the part of the insurance company amounted "to a waiver of any defense that the risk was not one assumed by it, and is therefore estopped from now asserting such defense in this action to charge it with liability."

The court says:

"In the case at bar there seems to have been a mutual understanding between the parties to this action that the insurance company should defend the action with a full 'reservation of policy rights.'"

With such reservation and with such understanding even the conduct of the defense by the insurance company and the taking of an

appeal after judgment rendered does not fix a liability upon the insurance company when it is free from such liability under the terms of the policy issued.

In this case there was not an agreement, nor an understanding, but there was a reservation on the part of the casualty company of its rights, and what it did in the matter of appearance and defense was done with such reservation and under such reservation.

Because it did what it did, the plaintiff here seeks to hold the defendant liable under a policy under which it is not liable, and it is sought to hold the defendant liable simply because, and only because, the casualty company appeared in the action and undertook, up to a certain point, the defense of the Maloney case.

If an insurance company is not liable where it undertakes the defense and conducts the trial and argues the appeal, with an understanding by the parties that the insurance company reserves its rights, then why should the company be liable where it did everything that it could do on its part to reserve and preserve its rights, and to induce the insured to either recognize the facts as they were or demonstrate to the reasonable satisfaction of the insurance company that the case was one in which there was on the part of the insurance company a liability?

If the waste company had protected its interests by defending the Maloney case, and it had resulted in an adjudication to the effect that the Maloney boy was over 16 and that the waste company was liable because of negligence in its relations with the Maloney boy, the Maryland Casualty Company would have been liable under its policy, not only for the judgment recovered, but for the costs and counsel fees to which it had been put in being obliged to itself look after the Maloney case; but because the defendant interposed an answer, verified by the waste company's officer, and appeared as the attorney of record at the trial court, under the conditions developed in this case, having in mind the effort on the part of the Maryland Casualty Company to fully advise the plaintiff of the facts developed, of the relation which they bore to the parties, of the claims of the casualty company, and of the reservation of its rights, it cannot be said in law or equity that this defendant should be held liable for the sums paid in satisfaction of the claim of the Maloney boy, when the evidence shows that under the policy of insurance the defendant was not liable.

In Koester v. Rochester Candy Works, 194 N. Y. 95, 87 N. E. 77, 19 L. R. A. (N. S.) 783, 16 Ann. Cas. 589, and in People v. Werner, 174 N. Y. 132, 66 N. E. 667, the Court of Appeals indicates that there is a difference between a civil action growing out of the employment of a minor in violation of the statute and a criminal prosecution based upon the same cause; but in either case the employment remains a violation of the law.

The employment of the Maloney boy by the waste company was a violation of the law, and the policy issued by the defendant did not cover any accident to a person or child thus employed.

In this trial the plaintiff made no proof as to the boy's age, ob-

jected to any evidence being adduced on that subject, took exceptions to the rulings that permitted the proof, and stands before the court relying entirely in its prayer for judgment upon the fact that the casualty company appeared in the action and refused to continue in the action, notwithstanding the notice which the casualty company gave repeatedly to the plaintiff; that therefore and for that reason there is a liability here.

The decision in Buffalo Steel Co. v. Ætna Life Ins. Co., as set forth particularly in the opinion of Justice Wheeler at the Trial Term, is, it seems, the law of this case.

The court there held that the insurance company conducting the defense had not estopped itself from disclaiming liability, it having notified the plaintiff of its claims.

The situation is the same here, except that the insurance company here did not conduct the defense; it gave the plaintiff every opportunity to protect its own interests, stated clearly the reasons for the position which it took, frankly stated the developments as the result of its investigation, the sources of its knowledge, and publicly presented the matter in court at the Trial Term.

Judgment was not taken by surprise, even if it was by default.

A more serious question might have arisen if under the circumstances the defendant had gone on with the defense. However that may be, the question is fairly here, and what is the law and what equity requires to be done should be done.

[4] The plaintiff contended upon the trial that the question as to the reasonableness of the notice given to it by the defendant, with the request to come into the action and defend, should have been submitted to a jury. It seemed then to the court, and it now seems, that that is a question of law, that all the questions here involved are those of law.

Whether this court is right can hereafter be determined by a higher court.

All of the cases bearing upon the questions here involved have been read and the rules laid down have been applied. The result is that in the opinion of this court the plaintiff should not recover.

A judgment may be entered dismissing the plaintiff's complaint, with costs.

Complaint dismissed.